UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION


M.T., by and through his parents,                    Case No. 16-cv-2552

    Plaintiff

    v.                                                           MEMORANDUM OPINION


Benton-Carrol-Salem Local School District, et al.,

    Defendants


I.    INTRODUCTION

Defendants collectively move for judgment on the pleadings on all counts asserted against them. (Doc. No. 12). Plaintiff does not oppose the motion. For the reasons stated below, Defendants' motion is granted in part and denied in part.

II.    BACKGROUND

The case before me arises out of an incident involving a bi-racial student at Defendant Benton-Carrol-Salem Local School District, a predominantly Caucasian school. (Doc. No. 1 at 3). Specifically, Plaintiff claims that his teacher, Defendant Russ Exlos-Raber, referred to him as "a brown dude" to the class on a day Plaintiff was absent. *Id.* at 2. Though the exact wording is contested, Exlos-Raber admitted to referring to Plaintiff as "brown skinned" in an email to Defendants Guy Parmigian and Laramie Spurlock, superintendent and principal of the school, respectively. *Id.* at 2-3. Upon Plaintiff's return to school, Plaintiff alleges Defendant Exlos-Raber again singled Plaintiff out, asking him to hold out his hands and say what color they were. *Id.* at 3.

Following the course of events, Plaintiff was taken out of the choir class and placed in a class he had already taken. *Id.*

### III. STANDARD

The same pleading requirements apply to a motion to dismiss under Rule 12(b)(6) and a motion for judgment under the pleadings pursuant to Rule 12(c). *Sensations, Inc. v. City of Grand Rapids*, 526 F.3d 291, 295 (6th Cir. 2008). A complaint must state sufficient facts to, when accepted as true, state a claim that is not merely speculative but "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v.Twombly*, 550 U.S. 544, 556-57, 570 (2007)) (explaining that the plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully" and requires the complaint to allow the court to draw the reasonable inference that the defendant is liable for the alleged misconduct); *see also Albrecht v. Treon*, 617 F.3d 890, 893 (6th Cir. 2010). Conclusory allegations or legal conclusions masquerading as factual allegations will not suffice. *Twombly*, 550 U.S. at 555. "For purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *S. Ohio Bank v. Merril Lynch, Pierce, Fenner & Smith, Inc.*, 479 F.2d 478, 480 (6th Cir. 1973).

### IV. DISCUSSION

Plaintiff asserted claims of (1) 42 U.S.C. § 1983 civil rights violations; (2) Title VI Civil Rights Act of 1964 violations; (3) 14th Amendment equal protection violations; and (4) negligent hiring, training, and supervision of employees. (Doc. No. 1). Defendants moved for judgment on the pleadings for all claims. (Doc. No. 12, 13).

A. 42 U.S.C. § 1983 Violation of Plaintiff's Fourteenth Amendment Rights

"To succeed on [a] § 1983 claim, [the plaintiff] must prove: (1) that he was deprived of a right secured by the Constitution or federal laws; and (2) that the deprivation was committed by a person acting under color of state law." *Toth v. City of Toledo*, 480 F. App'x 827, 831-32 (6th Cir.

2012) (citing *Parratt v. Taylor*, 451 U.S. 527, 535 (1981) (overruled on other grounds by *Daniels v. Williams*, 474 U.S. 327 (1986)). By the language of the complaint, Plaintiff appears to be asserting deprivation of his rights under the Due Process and Equal Protection Clauses of the Fourteenth Amendment.

The Due Process Clause is not confined by specific bounds, but is instead a more fluid concept. *Rochin v. California*, 342 U.S. 165, 170-72 (1952). Because of the vague nature, the Court has generally been reluctant to expand the bounds of substantive due process protection, reserving it to "matters relating to marriage, family, procreation, and the right to bodily integrity." *Albright v. Oliver*, 510 U.S. 266, 272 (1994); *see also Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 125 (1992) ("The doctrine of judicial self-restraint requires us to exercise the utmost care whenever we are asked to break new ground in this field."); *Rochin*, 342 U.S. at 172 (holding due process violations "do more than offend some fastidious squeamishness or private sentimentalism" but instead must "shock[ ] the conscience."). When evaluating a claim of this nature, "[i]t is important…to focus on the allegations in the complaint to determine how petitioner describes the constitutional right at stake and what the [public official] allegedly did to deprive [the petitioner] of that right." *Collins*, 503 U.S. at 125.

Here, Plaintiff alleges that his life and liberty were deprived, but has failed to state any facts to support this allegation. While Exlos-Raber's comments were racially insensitive, they do not shock the conscience. Plaintiff was not subjected to continual racial harassment and was removed from the class soon after the incident. Though Plaintiff did not take choir after this time, he was not deprived of his right to attend school nor does he allege any other ramifications suffered as a result of the incident. Since Plaintiff has not stated any facts to state how any Defendant deprived him of his due process rights, the § 1983 Due Process Clause claim must fail as a matter of law.

The remaining constitutional right asserted by Plaintiff falls under the Fourteenth Amendment's right to equal protection. "The Equal Protection Clause prevents states from making

distinctions that (1) burden a fundamental right; (2) target a suspect class; or (3) intentionally treat one individual differently from others similarly situated without any rational basis." *Johnson v. Bredesen*, 624 F.3d 742, 746 (6th Cir. 2010). "[A] person bringing an action under the Equal Protection Clause must show intentional discrimination against him because of his membership in a particular class, not merely that he was treated unfairly as an individual." *Bass v. Robinson*, 167 F.3d 1041, 1050 (6th Cir. 1999). Because of the integrated nature of the § 1983 claim based on the Equal Protection Clause and independent claim on the same, Defendants' respective liability for both is discussed in the subsections below.

1. Defendant Benton-Carrol-Salem Local School District

The doctrine of *respondeat superior* does not apply to § 1983 actions against municipalities. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691 (1978). A municipality is liable only when the tortfeasor has acted "pursuant to official municipal policy" that acted as the "moving force of the constitutional violation." *Id.* at 691, 695. The unconstitutional policy need not be written, but may be "practices of state officials…so permanent and well settled as to constitute a 'custom or usage' with the force of law." *Id.* at 690-91 (quoting *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 167-68 (1970)); *see also Doe v. Claiborne Cnty., Tenn.*, 103 F.3d 495, 507-08 (6th Cir. 1996).

A municipality's inaction or inadequate training may constitute an unlawful policy or custom and give rise to liability. Inaction requires:

> (1) the existence of a clear and persistent pattern of discrimination by municipal employees; (2) notice or constructive notice on the part of the [school district]; (3) the [school district]'s tacit approval of the unconstitutional conduct, such that its deliberate indifference in its failure to act can be said to amount to an official policy of inaction; and (4) that the [school district]'s custom was the "moving force" or direct causal link in the constitutional deprivation.

*Arendale v. City of Memphis*, 519 F.3d 587, 599-600 (6th Cir. 2008). Similarly, inadequate training requires that the inadequacy was "the result of the municipality's deliberate indifference" and "closely related to or actually caused the injury." *Ellis ex rel. Pendergrass v. Cleveland Mun. Sch. Dist.*,

4

455 F.3d 690, 700-01 (6th Cir. 2006); *see also City of Canton v. Harris*, 489 U.S. 378, 388-92 (1989). Under either of these theories, the Plaintiff must show: (1) that the school "fail[ed] to act in response to repeated complaints of constitutional violations," *Ellis*, 455 F.3d at 701 (inadequate training) (citations omitted); or (2) "consciously never acted when confronted with its employees' egregious and obviously unconstitutional conduct." *Arendale*, 519 F.3d at 600 (inaction) (citations omitted).

Plaintiff has failed to assert any facts to support a theory that the school repeatedly ignored racial comments made by teachers to students. The facts alleged support the school's argument that, when confronted with this incident, they removed Plaintiff from Exlos-Raber's class. There are no facts asserted in the complaint of any discrimination against the Plaintiff following the incident. Since the school was not a "moving force" to any racial discrimination against Plaintiff, Defendant Benton-Carrol-Salem is granted judgment on the §1983 claim. Further, judgment is granted with respect to all claims against individual Defendants in their "official capacity" "because a suit against an official of the state is treated as a suit against the municipality." *Doe*, 103 F.3d at 509 (citing *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985)).

While the school may not incur liability under § 1983, it does have a duty under the Equal Protection Clause, as a public institution, to "treat similarly situated individuals in a similar manner." *Buchanan v. City of Bolivar, Tenn.*, 99 F.3d 1352, 1360 (6th Cir. 1996) (*Gutzwiller v. Fenik*, 860 F.2d 1317, 1328 (6th Cir. 1988)). But, as discussed above, the school did not have a custom of racial discrimination. As in *Buchanan*, Plaintiff has made no allegation that the *school* treated him differently than any other Caucasian student. 99 F.3d at 1360. Since Plaintiff has not alleged intentional discrimination by the school because of his race, his Equal Protection Clause claim fails as well.

2.  Defendants Guy Parmigian and Laramie Spurlock

As was the case with municipalities, *respondeat superior* does not impose liability on supervisors for the purpose of § 1983 claims. *Leach v. Shelby Cnty. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989) (citing *Rizzo v. Goode*, 423 U.S. 362, 370-71 (1976)). While supervisors may be liable for their own

5

unconstitutional activity under § 1983, "liability of supervisory personnel must be based on more than merely the right to control employees." *Hays v. Jefferson Cnty., Ky.*, 668 F.2d 869, 872 (6th Cir.) *cert. denied,* 459 U.S. 833, 103 S.Ct. 75, 74 L.Ed.2d 73 (1982). According to the Sixth Circuit,

> a failure of a supervisory official to supervise, control, or train the offending individual officers is not actionable absent a showing that the official either encouraged the specific incident of misconduct or in some other way directly participated in it. At a minimum a plaintiff must show that the official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers.

*Hays*, 668 F.2d at 874. That is not the case here. Plaintiff has failed to assert any facts to indicate Parmigian or Spurlock directly participated in or approved of the comments made by Exlos-Raber. There are also no allegations that either did anything independent of the incident that would give rise to liability under § 1983. Since the complaint is absent of any facts regarding Defendants Parmigian or Spurlock's discriminatory conduct, judgement is granted to them on the § 1983 claim. Similarly, because Plaintiff has alleged no facts that Parmigian or Spurlock intentionally discriminated against him because of his race, the Equal Protection Clause claim also fails as a matter of law.

3. Defendant Russ Exlos-Raber

For purposes of a § 1983 claim, "generally, a public employee acts under color of state law while acting in his official capacity or while exercising his responsibilities pursuant to state law." *West v. Atkins*, 487 U.S. 42, 49-50 (1988). As a teacher of a public school, Exlos-Raber was a public employee acting under the color of law at the time of the incident. The fact that the statements were made by a teacher magnifies the seriousness of the incident. *See Brooks v. Skinner*, 139 F. Supp.3d 869, 885 (S.D. Ohio 2015); *Fulton v. W. Brown Local Sch. Dist. Bd. of Educ.*, 2016 WL 6893845, at *7 (S.D. Ohio Nov. 23, 2016). Even though Exlos-Raber only made two comments referring to Plaintiff's "brown" skin, in doing so, he treated Plaintiff differently than his Caucasian classmates. *See, e.g., Brooks*, 139 F. Supp.3d at 891-92 ("[A] jury could reasonabl[y] conclude that [the teacher]'s

6

personal use of racial comments to [the student] demonstrated a discriminatory intent. 'Race card' comments, by their very nature, could lead a reasonable jury to infer that [the teacher] was treating [the student] differently than white students as it was unlikely that [the teacher] would accuse white students of 'playing the race card.'"). As the complaint states sufficient facts to support the § 1983 and Equal Protection Clause claims against Exlos-Raber, judgment is denied.

B.    Title VI Civil Rights Act of 1964

Under Title VI of the Civil Rights Act of 1964,

> No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.

42 U.S.C. § 2000d. As a public school receiving federal funding, Defendant Benton-Carrol-Salem is a "program or activity" under the statute. *See* 42 U.S.C. § 2000d-4a(2)(B). Since the school itself is the only party to this claim receiving federal funding, a Title VI action may not be brought against Parmigian, Spurlock, or Exlos-Raber. Judgment is granted to them accordingly. *See Buchanan*, 99 F.3d at 1356; *Farm Labor Org. Comm. V. Ohio State Highway Patrol*, 95 F. Supp. 2d 723, 741 (N.D. Ohio 2000) ("The proper defendant in a Title VI case is an entity rather than an individual.") (citation omitted).

To succeed on a Title VI claim against the school, Plaintiff must show that the school intentionally discriminated against him because of his race. *Alexander v. Sandoval*, 532 U.S. 275, 280-81 (2001); *see also Buchanan*, 99 F.3d at 1356 ("[W]here the decisionmaker is motivated by a factor other than the excluded party's race, there can be no intentional discrimination."). When analyzing Title VI liability of schools based on student-on-student racial harassment, courts have regularly applied the test outlined in *Davis v. Monroe County Board of Education*, 526 U.S. 629 (1999), which analyzes school liability under Title IX for student-on-student sexual harassment. *See, e.g., Zeno v. Pine Plains Cent. Sch. Dist.*, 702 F.3d 655, 665-66 (2d Cir. 2012); *Bryant v. Indep. Sch.Dist. No. I-38 of Garvin Cnty, Okla.*, 334 F.3d 928, 934 (10th Cir. 2003). In *Gebser v. Lago Vista Independent School*

7

*District*, 524 U.S. 274 (1998), the Court analyzed school liability under Title IX for teacher-on-student sexual harassment. The Court found that a school is not liable in this situation "unless an official who at a minimum has authority to address the alleged discrimination and to institute corrective measures on the [school]'s behalf has actual knowledge of discrimination in the [school]'s programs and fails adequately to respond." *Id.* at 290. In accordance with the application of the *Davis* test to student-on-student Title VI actions, I will apply the *Gebser* standard to this teacher-on-student Title VI claim.

Those in authority at the school who knew of the incident did not act with "deliberate indifference to discrimination." *Gebser*, 524 U.S. 290. In response to the incident, Plaintiff was promptly removed from Exlos-Raber's class. Plaintiff asserts no unnecessary delay on the part of the school in taking this measure or any continued racial harassment following it. Because Plaintiff has alleged no conduct that would imply that the school failed to take corrective measures, Defendant Benton-Carrol-Salem is granted judgment on the Title VI claim.

C.      Negligent Hiring, Training, and Supervision

Plaintiff's final claim of negligent hiring, training, and supervision is asserted against all Defendants. At the outset, Defendant Exlos-Raber is granted judgment as he could not have negligently hired, trained, or supervised himself. The remaining Defendants assert defenses of statutory immunity under the Ohio Political Subdivision Tort Liability Act.

1.      Defendant Benton-Carrol-Salem

The Act states that "a political subdivision is not liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function." O.R.C. § 2744.02 (A)(1). Under the Act, a school district is a "political subdivision," and "[t]he provision of a system of public education" is a "government function." O.R.C. §§ 2744.01(C)(2)(c), 2744.01(F). As a school district providing Plaintiff with a public

8

education at the time of the incident, Defendant Benton-Carrol-Salem falls within the scope of the statute.

"[I]mmunity is not absolute;" there are five statutory exceptions to the rule. *Colbert v. Cleveland*, 99 Ohio St. 3d 215, 216 (2003); O.R.C. § 2744.02(B). The exceptions include those involving: (1) operation of a motor vehicle; (2) a proprietary function; (3) public roads; (4) building defects; and (5) duties owed expressly under the Ohio Revised Code. O.R.C. § 2744.02(B). None of the exceptions apply to the issue of negligent hiring, supervision, or training. Since Defendant Benton-Carrol-Salem is immune from liability under the Act, judgment is granted on the claim of negligent hiring, training, and supervision.

2.  Defendants Parmigian and Spurlock

    The Act also grants immunity to employees of political subdivisions unless:

    (a) The employee's acts or omissions were manifestly outside the scope of the employee's employment or official responsibilities;
    (b) The employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner;
    (c) Civil liability is expressly imposed upon the employee by a section of the Revised Code.

O.R.C. § 2744.03(A)(6). Plaintiff has alleged no express statutory liability that would preclude immunity under § 2744.03(A)(6)(c). Since hiring, training, and supervising are "official responsibilities" of school administrators and within the scope of employment, the exception of § 2744.03(A)(6)(a) does not apply. Finally, inherent in the claim is *negligent* action, not the heightened level of culpability required by § 2744.03(A)(6)(b). Because no exception applies, Defendants Parmigian and Spurlock are immune from liability under the Act and judgment is granted.

V.    CONCLUSION

Defendants' unopposed motion for judgment on the pleadings is granted in part and denied in part. (Doc. No. 12). Defendants Benton-Carrol-Salem, Parmigian, and Spurlock are granted judgment on all claims. Defendant Exlos-Raber is granted judgment on the § 1983 Due Process

9

Clause, Title VI, and negligent hiring, training, and supervision claims; he is denied judgment on the § 1983 and independent Equal Protection Clause claims.

So Ordered.

s/ Jeffrey J. Helmick  
United States District Judge